The People of the State of New York, Respondent, v. Warren Shivers, Appellant.

No opinion. Christ, Acting P. J., Rabin and Munder, JJ., concur; Hopkins, J. dissents and votes to reverse the judgment and to order a new trial, with the following memorandum, in which Benjamin, J. concurs: Defendant was convicted of attempted robbery in the first degree, attempted grand larceny in the first degree, assault in the second degree (two counts) and possession of a dangerous weapon as a misdemeanor. He and one Jackson were accused of involvement in a hold-up of a liquor store in Inwood. Shortly after the incident, a police officer found defendant and Jackson walking on the street. They fitted the description of the men in the attempted robbery. The officer called the pair to his patrol car, drew his revolver and interrogated them concerning the robbery. Defendant said that he had been at a friend's house and denied that he had been present in Inwood earlier. Prior to the questioning the officer did not inform defendant of his right to counsel or that any statement which defendant made could be used against him. Defendant's statement was introduced in evidence by the prosecution at the trial, which was held following *Miranda* v. *Arizona* (384 U. S. 436). He had moved previously to suppress the statement and that motion was denied after a *Huntley* hearing. Beyond doubt, the prosecution was enabled by the use of the statement to assail the credi-

bility of defendant, who testified at the trial that he had been in the liquor store to make a purchase at the time of the incident, but that another customer had attacked the clerk and that he, defendant, had then become frightened and fled; he denied any complicity in the crime. As the brief of the People frankly asserts, the jury could consider in determining defendant's culpability the falsity of his denial to the officer (if so, the jurors found it) that he had been in the vicinity of Inwood at the time of the attempted robbery. Hence, the admissibility of the statement was a material factor in defendant's conviction. In my opinion, the statement was inadmissible. It is not important that defendant's statement was exculpatory; *Miranda* commands the suppression of all statements taken in noncompliance with its dictates, whether the statements are exculpatory or inculpatory (*Miranda* v. *Arizona,* 384 U. S. 436, 444, *supra*). The critical test is whether the statement is derived from custodial interrogation, i.e. " questioning initiated after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way ". (*Miranda* v. *Arizona, supra,* pp. 444, 477). Even assuming that the jury was free to decide that defendant was not in custody at the time of the questioning, I must conclude that at the time he was deprived of his freedom of action. No reasonable person could believe, when presented with a drawn revolver pointed in his direction by a police officer, that he was at liberty to depart; the objective signs of both detention and custody are clear from the gun in readiness. Indeed, the officer testified at the *Huntley* hearing that defendant was not free to leave. Without doubt, there will be instances when the *Miranda* test of deprivation of freedom of action pivots on the subjective conclusion of either the defendant or the police formed under the particular circumstances. A subjective conclusion of the defendant, without reliance on any objective signs of custodial interrogation, may well be suspect: the defendant may be indulging in convenient afterthought, or his conclusion may not be reasonably supported by the circumstances. A subjective conclusion of the police officer that at the time of the questioning he had mentally determined that the defendant should be held from leaving, without communication in words or acts to the defendant, might be considered as meaningless, since the pressure of compulsion had not been imposed on the defendant. I interpret our recent holdings in *People* v. *Allen* (28 A D 2d 724) and *People* v. *Rodney P. (Anonymous)* (28 A D 2d 723), by which I am bound, in the light of this analysis. In *Allen,* the questioning took place in the defendant's home, in the presence of his wife and others; there was testimony by the police officer that he would not have allowed the defendant to leave, but that intention was not communicated to the defendant and there were not objecive signs of compulsion. In *Rodney P. (Anonymous),* the questioning took place outside the defendant's house, and there were no objective signs of custody. That is to say, in both cases the defendant could not have known from the actions of the police that the stage had shifted from investigation to accusation. Here, we meet no subjective conclusion, no mistaken understanding of purpose, but a clear and decisive exertion of authority. A drawn and pointed revolver has no ambiguity, and its compulsion is manifest. The threat is direct, and the need to comply immediate.